# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 7, 2022
Lyle W. Cayce
Clerk

No. 20-50168

NEXTERA ENERGY CAPITAL HOLDINGS, INCORPORATED;
NEXTERA ENERGY TRANSMISSION, L.L.C.; NEXTERA ENERGY
TRANSMISSION MIDWEST, L.L.C.; LONE STAR TRANSMISSION,
L.L.C.; NEXTERA ENERGY TRANSMISSION SOUTHWEST, L.L.C.,

*Plaintiffs—Appellees*,

AND

LSP TRANSMISSION HOLDINGS II, L.L.C.; EAST TEXAS
ELECTRIC COOPERATIVE, INCORPORATED,

*Movants—Appellants*,

*versus*

COMMISSIONER ARTHUR C. D'ANDREA, *Public Utility Commission of Texas, in his official capacity*; COMMISSIONER SHELLY BOTKIN, *Public Utility Commission of Texas, in her official capacity*; CHAIRMAN DEANN T. WALKER, *Public Utility Commission of Texas, in her official capacity*,

*Defendants—Appellees*,

AND

ENTERGY TEXAS INCORPORATED; ONCOR ELECTRIC DELIVERY
COMPANY, L.L.C.;
SOUTHWESTERN PUBLIC SERVICE COMPANY,

*Movants—Appellants.*

No. 20-50168

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-626

---

Before Dennis and Elrod, *Circuit Judges*.[†]

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

**Certified as a true copy and issued
as the mandate on Dec 29, 2022**

**Attest:**
**Clerk, U.S. Court of Appeals, Fifth Circuit**

---

[†] This appeal is being decided by a quorum. 28 U.S.C. § 46(d).

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 7, 2022

Lyle W. Cayce
Clerk

No. 20-50168

NextEra Energy Capital Holdings, Incorporated;
NextEra Energy Transmission, L.L.C.; NextEra Energy
Transmission Midwest, L.L.C.; Lone Star Transmission,
L.L.C.; NextEra Energy Transmission Southwest, L.L.C.,

*Plaintiffs—Appellees*,

and

LSP Transmission Holdings II, L.L.C.; East Texas
Electric Cooperative, Incorporated,

*Movants—Appellants*,

*versus*

Commissioner Arthur C. D'Andrea, *Public Utility Commission of Texas, in his official capacity*; Commissioner Shelly Botkin, *Public Utility Commission of Texas, in her official capacity*;
Chairman Deann T. Walker, *Public Utility Commission of Texas, in her official capacity*,

*Defendants—Appellees*,

and

Entergy Texas Incorporated; Oncor Electric Delivery
Company, L.L.C.;
Southwestern Public Service Company,

*Movants—Appellants*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-626

---

Before Dennis and Elrod, *Circuit Judges*.[†]

Per Curiam:[*]

In 2019, Texas enacted a law known as Senate Bill (SB) 1938 granting the ability to build, own, or operate new electric transmission lines "that directly [connect] with an existing utility facility . . . only to the owner of that existing facility"—*i.e.*, granting a right of first refusal. Tex. Util. Code § 37.056(e). Plaintiff NextEra Energy Capital Holdings, Inc. filed this suit against the Commissioners of the Public Utility Commission of Texas challenging the constitutionality of SB 1938. This appeal presents the sole question of whether five other entities involved in the electric transmission market may intervene in this case to variably attack or defend SB 1938. Because these entities meet the liberal standard to intervene as of right, we REVERSE the district court's order denying intervention and REMAND for further proceedings.

**I.**

In 2018, NextEra, a Florida-based corporation with transmission lines in multiple states but not in Texas, won a bid with the Midcontinent Independent System Operator, Inc. (MISO) to build a new transmission line known as the Hartsburg-Sabine Line in East Texas. Before construction could begin, however, Texas enacted SB 1938 limiting the right to build and operate transmission lines in Texas to those entities already owning transmission lines in Texas. SB 1938 ultimately prevented NextEra from

---

[†] This appeal is being decided by a quorum. 28 U.S.C. § 46(d).

[*] This opinion is not designated for publication. *See* 5th Circuit Rule 47.5.

being able to construct the Hartsburg-Sabine Line. On June 17, 2019, NextEra filed suit against the Commissioners of the of the Public Utility Commission of Texas under 42 U.S.C. § 1983, alleging SB 1938 violates the dormant Commerce Clause and the Contracts Clause and seeking declaratory and injunctive relief.

Before the Commissioners filed responsive pleadings, several third parties sought to intervene as a matter of right or, alternatively, permissively. Three entities sought to intervene to defend SB 1938. Entergy Texas, Inc.; Oncor Electric Delivery Co. LLC; and Southwestern Public Service Co. (SPS) are all entities owning transmission lines in Texas who hold the rights of first refusal granted by SB 1938. Entergy moved to intervene on August 6, 2019; Oncor on August 7, 2019; and SPS on August 8, 2019. Two entities sought to intervene to challenge the constitutionality of SB 1938, LSP Transmission Holdings II, LLC and East Texas Electric Cooperative, Inc. (ETEC). LSP is a transmission utility without a presence in Texas which intended to compete for transmission projects in Texas but was prevented from doing so by SB 1938. LSP filed its motion to intervene on July 12, 2019. ETEC is a non-profit rural electric cooperative that owns power-generating plants and power transmission lines in the part of Texas within Entergy's transmission area. ETEC is largely dependent on Entergy's transmission lines, and SB 1938 prevents ETEC and other entities who might compete with Entergy from building new lines from lines owned by Entergy. ETEC moved to intervene on August 19, 2019.

The Defendant Commissioners filed a motion to dismiss NextEra's complaint for failure to state a claim under the dormant Commerce Clause and Contracts Clause on August 23, 2019. Six months later, on February 26, 2020, the district in one order both denied the motions to intervene and granted the motion to dismiss.

NextEra appealed the district court's decision to grant the motion to dismiss, and Entergy, Oncor, SPS, LSP, and ETEC appealed the denial of their motions to intervene. The merits and intervention appeals proceeded separately. This court has already reversed in part and affirmed in part the district court's order granting the motion to dismiss, reversing the dismissal of NextEra's dormant Commerce clause claims because SB 1938 is facially discriminatory under the dormant Commerce Clause and because dismissal of NextEra's discriminatory purpose and effects claims was premature, while affirming the dismissal of NextEra's Contracts Clause claim. *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306 (5th Cir. 2022). The instant appeal concerns only the district court's denial of the motions to intervene.

## II.

Federal Rule of Civil Procedure 24 allows certain parties to intervene by right. Fed. R. Civ. P. 24(a). If the right to intervene is not granted by some other federal statute, *see* Fed. R. Civ. P. 24(a)(1), a party can still intervene if it satisfies the four elements of Rule 24(a)(2):

> (1) the application for intervention must be timely;
>
> (2) the applicant must have an interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]
>
> (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). It is the movant's burden to establish the right to intervene, but "Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "Federal courts should allow intervention 'where no one would be hurt and

the greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). "A ruling denying intervention of right is reviewed de novo." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas*, 805 F.3d at 656).

The district court concluded that no party seeking to intervene could meet the Rule 24 standard largely because "the existing parties adequately protect th[eir] interest[s]." However, on appeal, no party contests that Entergy, Oncor, SPS, LSP, and ETEC meet the standard to intervene as of right. We agree and allow these parties to intervene.

### A.

The first prong is timeliness. Timeliness "is contextual; absolute measures of timelines should be ignored." *Id.* at 565 (quoting *Espy*, 18 F.3d at 1205). Timeliness "is not limited to chronological considerations but is to be determined from all the circumstances." *Id.* (internal quotations omitted) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977)). We consider four factors in evaluating timeliness: 1) the length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene; 2) the extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; 3) the extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and 4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Stallworth*, 558 F.2d at 264-66).

In this case, Entergy, Oncor, SPS, LSP, and ETEC each sought to intervene within two months of NextEra filing suit and before the Defendant Commissioners filed responsive pleadings. *Cf. Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (finding intervention timely when filed five months after receiving notice of the party's interest in the case). Intervention this early before discovery and before litigation of major issues would not cause extensive prejudice or delay. *See Wal-Mart*, 843 F.3d at 565-66 ("Because the Association sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the Association's motion was timely."). Entergy, Oncor, SPS, LSP, and ETEC's interventions were timely.

## B.

Second, each of Entergy, Oncor, SPS, LSP, and ETEC has demonstrated an interest in the subject of this action. "The precise definition of an 'interest' has been hard to pin down, but we have interpreted Rule 24(a)(2) to require a 'direct, substantial, legally protectable interest in the proceedings.'" *La Union*, 29 F.4th at 306 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996)). "Property interests are the quintessential rights Rule 24(a) protects, but we have made clear that Rule 24(a)(2) does not require 'that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2).'" *Id.* (quoting *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987)). Nor does a "legally protectable interest" mean the interest must be "legally enforceable"; rather "[a]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* (quoting *Texas*, 805 F.3d at 659).

6

Generally, we will not grant intervention of right for purely "ideological, economic, or precedential" reasons. *Id.* (quoting *Texas*, 805 F.3d at 658). However, "economic interests can justify intervention when they are directly related to the litigation." *Wal-Mart*, 834 F.3d at 568 (citing *Espy*, 18 F.3d at 1207). For example, a scheme's "prospective interference with [economic] opportunities can justify intervention." *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (finding an interest where a decree threatened promotion opportunities); *see also Edwards*, 78 F.3d at 1004 (finding an interest where a decree threatened "equal access to a promotion system and promotion opportunities"); *Brumfield*, 749 F.3d at 343 (finding an interest where a potential decree threatened "equal access to" educational "opportunities"). Moreover, we have found the "intended beneficiary of a government regulatory system" has a legally protected interest in a case challenging that system. *Wal-Mart*, 834 F.3d at 567-69; *see also Texas*, 805 F.3d at 660.

In this case, the parties seeking to intervene in SB 1938's defense—Entergy, Oncor, and SPS—are all entities who hold the rights of first refusal granted by SB 1938 and are thus the intended beneficiaries of SB 1938. Because the constitutionality of SB 1938's right-of-first-refusal scheme is the subject of this case, Entergy, Oncor, and SPS have each demonstrated a legally protectable interest related to the subject matter of this case. *See Wal-Mart*, 834 F.3d at 567-69; *Texas*, 805 F.3d at 660.

Turning to the parties seeking to challenge SB 1938, LSP is an out-of-state transmission company which would be qualified to compete for transmission projects in Texas but is prevented from entering the Texas market by SB 1938. ETEC owns power-generating plants and power transmission lines in the part of Texas within Entergy's transmission area. ETEC would like to build its own new lines from those owned by Entergy or contract with other entities who do so, but SB 1938 prevents anyone but

Entergy from building lines off of those owned by Entergy and thus forces ETEC to be dependent on Entergy. Both ETEC and one of LSP's subsidiaries competed for the contract to build the Hartsburg-Sabine Line which was ultimately awarded to NextEra. Because SB 1938 prospectively interferes with LSP and ETEC's business opportunities, they have each demonstrated a legally protectable interest related to the subject matter of this case. *See Black Fire Fighters Ass'n*, 19 F.3d at 994; *Edwards*, 78 F.3d at 1004; *Brumfield*, 749 F.3d at 343.

### C.

Entergy, Oncor, SPS, LSP, and ETEC have also each satisfied the third prong that disposition of this action may, as a practical matter, impair or impede their abilities to protect their interests. "The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield*, 749 F.3d at 344. "Though the impairment must be 'practical' and not merely 'theoretical,' the [parties seeking to intervene] need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union*, 29 F.4th at 307 (citing *Brumfield*, 749 F.3d at 344-45). We have held that a party's interest in a regulatory scheme "is impaired by the *stare decisis* effect of the district court's judgment" as to the scheme's validity. *Espy*, 18 F.3d at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992)). That is the case here. A finding that SB 1938 is unconstitutional would impair the rights of first refusal of Entergy, Oncor, and SPS, while a finding that SB 1938 is constitutional would impair LSP and ETEC's business prospects.

### D.

Finally, Entergy, Oncor, SPS, LSP, and ETEC have each met their minimal burden of showing inadequate representation. Parties seeking to

intervene as of right "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *La Union*, 29 F.4th at 307-08 (quoting *Texas*, 805 F.3d at 661-64). This burden is "minimal." *Id.* at 608 (quoting *Edwards*, 78 F.3d at 1005); *see also Wal-Mart*, 834 F.3d at 569. However, we have recognized "two presumptions of adequate representation," *Brumfield*, 749 F.3d at 345. The first presumption arises when the intervenor "has the same ultimate objective as a party to the lawsuit." *Texas*, 805 F.3d at 661–62. This presumption can be overcome by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (quoting *Edwards*, 78 F.3d at 1005). An intervenor can establish an adversity of interest if "its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662. The second presumption arises when the existing party "is a governmental body or officer charged by law with representing the interests" of the intervenor, which can be overcome by showing that the intervenor's "interest is in fact different from that of the" governmental party "and that the interest will not be represented by" the existing governmental party. *Id.* at 661–62 (quoting *Edwards*, 78 F.3d at 1005). Assuming these presumptions apply, Entergy, Oncor, SPS, LSP, and ETEC have rebutted them by showing adversity of interest.

First, the parties seeking to defend SB 1938—Entergy, Oncor, and SPS—have shown their interests may diverge from the Texas Commissioners defending the law. The Commissioners have many interests in this case, including defending the SB 1938 statewide while also maintaining "its relationship with the federal government," which highly regulates the energy sector, and "with the courts." *Brumfield*, 749 F.3d at 346. Entergy, Oncor, and SPS, on the other hand, are more concerned with protecting their business interests, particularly the rights of first refusal they have enjoyed. "The government must represent the broad public interest,

not just the economic concerns of" Entergy, Oncor, and SPS. *Espy*, 18 F.3d at 1208; *see also Brumfield*, 749 F.3d at 346; *La Union*, 29 F.4th at 309. Indeed, the Commissioners have expressed contrary views in the past, issuing an advisory opinion in 2017—before SB 1938's passage—that allowed for competitive bidding among transmission projects, and the Commissioners' past views have been used by NextEra to attempt to undermine SB 1938 and the motive behind its passage. Entergy, Oncor, and SPS, then, may be in a better position to defend their interests, especially as litigation progresses and compromises are made. "We cannot say for sure that the [Commissioners'] more extensive interests will in fact result in inadequate representation, but surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346; *see also La Union*, 29 F.4th at 309.

As for the parties seeking to challenge SB 1938—LSP and ETEC—they have shown their interests may diverge from NextEra's. LSP, ETEC, and NextEra are all competitors in the transmission market. NextEra's motivation in challenging SB 1938 has been to vindicate its awarded contract to build the Hartsburg-Sabine Line. Thus, NextEra brought a Contracts Clause claim, which LSP and ETEC have no interest in. *See Brumfield*, 749 F.3d at 346 (emphasis added) ("The lack of unity in all objectives, combined with real and legitimate *additional or contrary arguments*, is sufficient to demonstrate that the representation may be inadequate."). Concerned with its own business interests, NextEra continually sought expedited consideration of its claims in the district court and in this court, while LSP and ETEC have no such interest. *See Entergy Gulf States La., L.L.C. v. U.S. Env't Prot. Agency*, 817 F.3d 198, 204 (5th Cir. 2016) (noting adverse interests between "prompt disclosure of requested documents" and "eventual disclosure"). LSP and ETEC have thus "specif[ied] the particular ways in which their interests diverge" from NextEra's and have

No. 20-50168

"identif[ied] the particular way in which these divergent interests have impacted the litigation." *Texas*, 805 F.3d at 663.

### III.

Because Entergy, Oncor, SPS, LSP, and ETEC have protectable interests that may be impaired or injured by the outcome of this lawsuit and because Entergy, Oncor, SPS, LSP, and ETEC have shown that the present parties may not adequately represent their interests, Entergy, Oncor, SPS, LSP, and ETEC are entitled to intervene as of right.[1] Thus, we need not address the district court's denial of permissive intervention.

Accordingly, we REVERSE the district court's denial of Entergy, Oncor, SPS, LSP, and ETEC's motions to intervene and REMAND for further proceedings consistent with this opinion.

---

[1] NextEra requests "reasonable conditions" on Entergy, Oncor, SPS, LSP, and ETEC's interventions. *See, e.g.*, *Beauregard, Inc. v. Sword Servs., L.L.C.*, 107 F.3d 351, 352-53 (5th Cir. 1997). We leave this issue to the district court and take no position on what conditions, if any, are appropriate in this case.

# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

December 29, 2022

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 20-50168    NextEra v. LSP Transm Holdings II
                           USDC No. 1:19-CV-626

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                           Sincerely,

                           LYLE W. CAYCE, Clerk

                           By: _____
                           Roeshawn Johnson, Deputy Clerk
                           504-310-7998

cc:  Mr. Michael Andrew Boldt
     Mr. Paul D. Clement
     Ms. Laurie Webb Daniel
     Mr. Mark C. Davis
     Ms. Tabitha De Paulo
     Ms. Catherine Garza
     Mr. Lawrence Bradley Hancock
     Mr. Jacob Lawler
     Mr. Thomas S. Leatherbury
     Mr. Lino Mendiola III
     Ms. Kasdin M. Mitchell
     Ms. Erin Murphy
     Mr. Ethan James Nutter
     Mr. Pascual Armando Oliu
     Ms. Lanora Christine Pettit
     Mr. Matthew E. Price
     Mr. Stuart H. Singer
     Mr. Jeffrey M. Tillotson
     Ms. Theresa M. Wanat
     Mr. John C. Wander