**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| NEXTERA ENERGY CAPITAL HOLDINGS, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> KATHLEEN JACKSON, Interim Chair, Public Utility Commission of Texas, et al., <br><br> *Defendants*. | Civil Action No. 1:19-cv-626 <br><br> **LSP TRANSMISSION HOLDINGS II, LLC'S MOTION FOR PRELIMINARY INJUNCTION** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

I.     Factual And Legal Background ................................................................ 3

      A.     The Federal Government Adopts Policies to Promote Competition in the Transmission of Electricity ..................................................... 3

      B.     LSP Successfully Competes for and Carries Out Regionally Planned Transmission Projects ............................................................ 6

      C.     Texas Attempts to Insulate In-State Transmission Owners from Out-of-State Competition by Enacting S.B. 1938 .............................. 7

II.     Procedural Background ........................................................................... 9

ARGUMENT ................................................................................................... 11

I.     LSP Is Highly Likely To Succeed On The Merits ................................. 11

II.     LSP Will Be Irreparably Injured If It Is Barred From Competing For New Projects ............................................................................................. 14

III.     The Remaining Factors Overwhelmingly Weigh In Favor Of Injunctive Relief ............. 16

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Librs. Ass'n v. Pataki,*
  969 F.Supp. 160 (S.D.N.Y. 1997) ................................................................ 16

*BST Holdings, LLC v. OSHA,*
  17 F.4th 604 (5th Cir. 2021) ................................................................ 2, 15

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
  520 U.S. 564 (1997) ................................................................ 2, 12

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
  98 F.4th 220 (5th Cir. 2024) ................................................... 2, 11, 16, 17

*Citicorp Servs., Inc. v. Gillespie,*
  712 F.Supp. 749 (N.D. Cal. 1989) ................................................................ 16

*Dickerson v. Bailey,*
  336 F.3d 388 (5th Cir. 2003) ................................................................ 15

*Dobbin Plantersville Water Supply Corp. v. Lake,*
  108 F.4th 320 (5th Cir. 2024) ................................................................ 16

*Doe v. Univ. of Cincinnati,*
  872 F.3d 393 (6th Cir. 2017) ................................................................ 15

*Emera Me. v. FERC,*
  854 F.3d 662 (D.C. Cir. 2017) ................................................................ 17

*FERC v. Elec. Power Supply Ass'n,*
  577 U.S. 260 (2016) ................................................................ 3

*Free Speech Coal., Inc. v. Paxton,*
  95 F.4th 263 (5th Cir. 2024) ................................................................ 17

*Fulton Corp. v. Faulkner,*
  516 U.S. 325 (1996) ................................................................ 12

*General Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) ................................................................ 9

*Gerling Glob. Reinsurance Corp. of Am. v. Low,*
  240 F.3d 739 (9th Cir. 2001) ................................................................ 16

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
  481 F.3d 60 (2d Cir. 2007) ................................................................ 16

*Granholm v. Heald,*
  544 U.S. 460 (2005) ................................................................ 12, 13

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) ................................................................ 15

*Hughes v. Oklahoma*,
   441 U.S. 322 (1979) ......................................................................... 2, 12

*Humana Ins. Co. v. LeBlanc*,
   524 F.Supp.2d 764 (M.D. La. 2007) ................................................. 16

*Ind. Fine Wine & Spirits, LLC v. Cook*,
   459 F. Supp. 3d 1157 (S.D. Ind. 2020) ....................................... 15, 16

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015) ........................................................... 16

*Karem v. Trump*,
   960 F.3d 656 (D.C. Cir. 2020) ......................................................... 15

*Kendall-Jackson Winery, Ltd. v. Branson*,
   82 F.Supp.2d 844 (N.D. Ill. 2000) ................................................... 16

*MISO Transmission Owners v. FERC*,
   819 F.3d 329 (7th Cir. 2016) ........................................................... 17

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) .......................................................... 1, 2

*Morehouse Enterprises, LLC v. ATF*,
   78 F.4th 1011 (8th Cir. 2023) ......................................................... 15

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ......................................................................... 12

*Nat'l Revenue Corp. v. Violet*,
   807 F.2d 285 (1st Cir. 1986) ........................................................... 13

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*,
   2022 WL 17492273 (5th Cir. Dec. 7, 2022) ..................................... 10

*NextEra Energy Cap. Holdings, Inc. v. Lake*,
   48 F.4th 306 (5th Cir. 2022) ..................................................... *passim*

*Okla. Gas & Elec. Co. v. FERC*,
   827 F.3d 75 (D.C. Cir. 2016) ........................................................... 17

*Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*,
   511 U.S. 93 (1994) ........................................................................... 12

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ........................................................................... 9

*Portée v. Morath*,
   683 F. Supp. 3d 628 (W.D. Tex. 2023) ............................................ 16

*S.C. Pub. Serv. Auth. v. FERC*,
   762 F.3d 41 (D.C. Cir. 2014) .......................................................... 3, 4

*Sporhase v. Nebraska ex rel. Douglas*,
   458 U.S. 941 (1982) ........................................................................... 2

*United Healthcare Ins. Co. v. Davis*,
    602 F.3d 618 (5th Cir. 2010) ................................................................... 16

*United States v. Abbott*,
    110 F.4th 700 (5th Cir. 2024) ............................................................ 1, 11

*Wages & White Lion Invs., L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) .................................................................. 16

**Statutes**

16 U.S.C. §824 ................................................................................................ 3

Tex. Utils. Code §37.056 ................................................................................ 8

**Regulations**

*Promoting Wholesale Competition Through Open Access Non-discriminatory
    Transmission Services by Public Utilities; Recovery of Stranded Costs by Public
    Utilities and Transmitting Utilities*, 75 FERC ¶61,080, 61 Fed. Reg. 21,540
    (Apr. 24, 1996) .......................................................................................... 4

*Regional Transmission Organizations*, 89 FERC ¶61,285 (Dec. 20, 1999) .................................... 4

*Southwest Power Pool, Inc.*, 144 FERC ¶61,059 (July 18, 2013) ................................... 5, 6, 13, 15

*Transmission Planning and Cost Allocation by Transmission Owning and Operating
    Public Utilities*, Order No. 1000, 136 FERC ¶61,051 (July 21, 2011) ................................. 5, 17

**Other Authorities**

Brief for Appellees, *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*,
    2020 WL 2119791 (5th Cir. Apr. 22, 2020) ................................................ 12

Brief for the United States as Amicus Curiae, *NextEra Energy Cap. Holdings, Inc.
    v. Lake*, 2023 WL 7002451 (U.S. Oct. 23, 2023) ...................................... 10

*Competitive Transmission Admin.*, MISO, https://tinyurl.com/52m9w7sh
    (last visited Sept. 20, 2024) ...................................................................... 6

Corina Rivera-Linares, *MISO: Republic Transmission Energized 345-kV Duff to
    Coleman Line on June 11*, T&D World (June 12, 2020),
    https://archive.ph/wip/aCkj3 .................................................................... 6

Docket Entry, *Lake v. NextEra Energy Cap. Holdings, Inc.*, No. 22-601
    (U.S. Mar. 6, 2023) .................................................................................. 10

FERC, *Electric Power Markets* (May 16, 2023), https://archive.ph/wip/IsJlI ............................. 4

Letter from Daniel Haar, Acting Chief, Competition Pol'y & Advoc. Section,
    Antitrust Div., U.S. Dep't of Just. to Travis Clardy, State Rep., Tex. House of
    Reps. (April 19, 2019), https://www.justice.gov/atr/page/file/1155881/dl ................................. 8

Petition for Writ of Certiorari, *Lake v. NextEra Energy Capital Holdings, Inc.*,
    2022 WL 18089507 (U.S. Dec. 28, 2022) .............................................. 2, 14

PJM Inside Lines, *Artificial Island Project Nears Completion*
    (Apr. 2, 2021), https://archive.ph/wip/ofSkv .............................................. 7

## INTRODUCTION

Five years ago, Plaintiffs initiated this action seeking to prevent enforcement of Texas Senate Bill 1938 of 2019 ("S.B. 1938") on the ground that it violates the Commerce Clause.  And Intervenor-Plaintiff LSP Transmission Holdings II, LLC ("LSP") promptly moved to intervene to seek the same relief.  Owing to a series of twists and turns, however, the case has not made it past preliminary motions in the five years since.  Meanwhile, development of the nation's electric grid has continued apace, including in regions directly impacted by this case.  Most recently, Southwest Power Pool, Inc. ("SPP")—the regional operator that manages the grid and wholesale power market for portions of 14 states in the central and southwest United States—announced plans to approve approximately $7.1 billion in new electric transmission projects, including over $1 billion in Texas, when its Board of Directors meets on October 29, 2024.  If S.B. 1938 remains in place at the time of the SPP Board's action, then SPP will in all likelihood deem itself bound to apply that facially discriminatory law, foreclosing qualified transmission developers like LSP from any opportunity to compete for those new Texas projects, as SPP will not hold a competitive solicitation at all.  Given that dynamic, LSP is forced to seek a preliminary injunction, lest it imminently suffer the very irreparable injury it joined this lawsuit to prevent.[1]

The case for granting that relief could hardly be clearer.  In deciding "whether to grant or deny a preliminary injunction," "likelihood of success on the merits … is 'the most important'" issue.  *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (en banc) (quoting *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)).  And that issue has already been resolved in Plaintiffs' favor by the Fifth Circuit, which held that "the very terms of SB 1938 discriminate against interstate commerce."  *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 326 (5th

---

[1] Of course, if the Court grants Plaintiffs' pending motion for judgment on the pleadings, Dkt.212, it would moot this motion for preliminary relief.

Cir. 2022).  That is as clear an indication of (at the very least) likelihood of success on a Commerce Clause claim as a party could ever hope to get.  After all, "the 'strictest scrutiny' [is] reserved for facially discriminatory legislation" like S.B. 1938.  *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 958 (1982) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979)); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 581-82 (1997) (a state law that facially discriminates against interstate commerce cannot be upheld unless the state carries the "extremely difficult burden" of proving that the law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives").  It is little wonder, then, that *Texas itself* has described its burden on remand in this case as "nearly insurmountable." Petition for Writ of Certiorari, *Lake v. NextEra Energy Capital Holdings, Inc.*, 2022 WL 18089507, at *31-32 (U.S. Dec. 28, 2022).  That was not hyperbole; the state cannot surmount its burden, as case after case has recognized that right-of-first-refusal laws like S.B. 1938 harm the public.

Of course, "even with a strong likelihood of success, a district court cannot give the other factors short shrift."  *Mock*, 75 F.4th at 587 n.60.  But the other factors need not occupy the Court for long either.  LSP's irreparable injury follows directly from the Fifth Circuit's opinion in *Lake*, as "the loss of [a] constitutional freedom[]"—here, the right to freely engage in interstate trade secured by the Commerce Clause—"unquestionably constitutes irreparable injury."  *E.g.*, *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).  And the imminence of LSP's irreparable injury is clear.  Absent an injunction, LSP will almost certainly lose the ability to compete for the unique business opportunities that SPP is on the eve of approving.  *See Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 237-38 (5th Cir. 2024) ("missed

opportunities" such as these constitute "irreparable harm").   LSP and other SPP-qualified transmission developers thus face a fast-approaching threat of irreparable injury.

Finally, the equities tilt decisively in favor of a preliminary injunction.  S.B. 1938's anticompetitive scheme harms not only companies (like Plaintiffs) that seek to compete for new transmission projects on the interstate grid, but tens of millions of consumers in Texas and beyond. Basic economic principles dictate that suppressing competition forces consumers to pay higher rates for less efficient services—a fact that a chorus of appellate courts have resoundingly echoed in recent years.  *See, e.g.*, *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 68-70, 74 (D.C. Cir. 2014) (per curiam).  Therefore, it is clearly in the public interest to allow LSP (and others) to compete for new transmission projects in the relevant parts of Texas during the pendency of this litigation.

LSP's motion for a preliminary injunction should be granted.

## BACKGROUND

### I.      Factual And Legal Background.

#### A.      The Federal Government Adopts Policies to Promote Competition in the Transmission of Electricity.

In the early 20th century, electricity markets largely "operat[ed] as vertically integrated monopolies in confined geographic areas."  *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 267 (2016).  Over time, however, an interstate market for electricity developed, with resource-rich states generating electricity to sell at wholesale for transmission across state lines to local retail distributors.  Congress enacted the Federal Power Act in 1935 to regulate this burgeoning interstate market.  The Act gives the Federal Energy Regulatory Commission ("FERC"), formerly known as the Federal Power Commission, exclusive authority to regulate transmission and wholesale sales of electricity in interstate commerce.  *See* 16 U.S.C. §824(b)(1).

Over the past 30 years, FERC has enacted a series of reforms to promote the development

of competitive markets.  In 1996, FERC issued Order No. 888, which directed any facility that connects to the interstate grid to unbundle its wholesale generation and transmission services and allow access to transmission on a non-discriminatory basis. *See Promoting Wholesale Competition Through Open Access Non-discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, 75 FERC ¶61,080, 61 Fed. Reg. 21,540 (Apr. 24, 1996).  Order No. 888 also promoted the concept of an independent system operator ("ISO") that would independently operate the transmission systems of multiple transmission owners in a geographic area. 61 Fed. Reg. at 21,551-52, 21,560, 21,593-97.  In 1999, FERC built on the ISO concept by issuing Order No. 2000, which encouraged owners of electric transmission systems in interstate commerce to voluntarily form regional transmission organizations ("RTOs") that are similar to ISOs but have additional responsibilities. *See Regional Transmission Organizations*, 89 FERC ¶61,285 (Dec. 20, 1999).  Both ISOs and RTOs are nongovernmental entities vested with authority, through FERC-approved agreements and tariffs, to operate interstate transmission grids on a regional basis.  One of the key roles of an ISO or RTO is to conduct regional planning for the transmission within its footprint, ensuring the reliability of the system and providing transmission access to wholesale power at reasonable costs. *See generally* FERC, *Electric Power Markets* (May 16, 2023), https://archive.ph/wip/IsJII.

For more than a decade after FERC issued Order No. 2000, many federally regulated ISOs and RTOs had tariffs or agreements that included provisions—known as rights of first refusal— through which incumbent utilities gave themselves a right to construct any new transmission facilities in their service areas. *See S.C. Pub. Serv. Auth.*, 762 F.3d at 71-72.  In July 2011, however, FERC issued Order No. 1000, which, among other things, required certain provisions granting a right of first refusal for new regional transmission facilities be removed from FERC-

approved tariffs and agreements.  *See Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Order No. 1000, 136 FERC ¶61,051 (July 21, 2011) (hereinafter "Order No. 1000"), *order on reh'g and clar.*, Order No. 1000-A, 139 FERC ¶61,132 (May 17, 2012), *order on reh'g and clar.*, Order No. 1000-B, 141 FERC ¶61,044 (Oct. 18, 2012).

FERC determined in Order No. 1000 that leaving these "federal" (i.e., federally sanctioned) rights of first refusal in place "would allow practices that have the potential to undermine the identification and evaluation of a more efficient or cost-effective solution to regional transmission needs, which in turn can result in rates for [FERC]-jurisdictional services that are unjust and unreasonable." *Id.* ¶7.  FERC further concluded that "federal rights of first refusal in favor of incumbent transmission providers deprive customers of the benefits of competition in transmission development, and associated potential savings." *Id.* ¶285.  FERC also received numerous comments supporting the elimination of federal rights of first refusal.  *See, e.g.*, ¶231 & n.202.

In compliance with Order No. 1000—and over the objections of incumbent transmission owners—RTOs and ISOs revised their transmission owner agreements and open access tariffs to remove right of first refusal provisions.  *See, e.g.*, *Southwest Power Pool, Inc.*, 144 FERC ¶61,059 (July 18, 2013), *on rehearing*, 149 FERC ¶61,048 (Oct. 16, 2014).  RTOs and ISOs also created competitive solicitation processes to select developers for new regional transmission projects and established mechanisms for allocating the costs of new regional projects.[2]  *See, e.g.*, *Sw. Power Pool, Inc.*, 144 FERC, at ¶¶1, 6-10; SPP, Open Access Transmission Tariff at Attachments J and Y (6th rev.) (Aug. 19, 2024), https://bit.ly/2RpwDc6 ("SPP Tariff").  Through these cost allocation mechanisms, the costs of a regionally planned project that is located entirely within one state are

---

[2] A project is considered "regional" for cost allocation purposes when two or more FERC jurisdictional utilities benefit from and pay for the transmission project.

often allocated across all or a substantial part of the grid operator's multistate region.  *See Sw. Power Pool, Inc.*, 144 FERC, at ¶6 nn.10-11.  Under the SPP tariff, for example, the costs of certain new facilities operating at 300 kV and above are allocated across all 14 states within the SPP region.  *See* SPP Tariff at Attachment J, §III.A.  For other new facilities operating between 100kV and 300kV, one-third of the costs are allocated on a regional basis, while the other two-thirds are allocated in the (often interstate) zone in which the facilities are located.  *Id.*

**B.      LSP Successfully Competes for and Carries Out Regionally Planned Transmission Projects.**

In addition to opening transmission projects up to greater competition, Order No. 1000 mandated a qualification process through which entities may become eligible to be assigned a new transmission project by an ISO or RTO.  Many LSP subsidiaries and affiliates have completed that qualification process, which requires prospective transmission developers to clearly outline rigorous technical, managerial, and financial capabilities.  Decl. of Sharon K. Segner ¶¶3-5 ("Ex.A"); *see, e.g.*, *Competitive Transmission Admin.*, MISO, https://tinyurl.com/52m9w7sh (last visited Sept. 20, 2024).  LSP entities are currently qualified as transmission developers in eight planning regions encompassing dozens of states from New York to California.  Ex.A ¶4.

What is more, LSP entities have been selected as the more efficient or cost-effective transmission developer for several new Order No. 1000 projects.  Ex.A ¶9.  For example, LSP affiliate Republic Transmission won—and completed—the first competitive transmission project in MISO: a 31-mile, 345 kV transmission line between southern Indiana and western Kentucky, known as the Duff-Coleman Project.  *See* Corina Rivera-Linares, *MISO: Republic Transmission Energized 345-kV Duff to Coleman Line on June 11*, T&D World (June 12, 2020), https://archive.ph/wip/aCkj3.  Another LSP affiliate, Silver Run Electric, won the first competitive solicitation in the PJM Interconnection, LLC ("PJM"), which spans the Mid-Atlantic Region from

New Jersey to eastern North Carolina and reaches as far west as northern Illinois. *See* PJM Inside

Lines, *Artificial Island Project Nears Completion* (Apr. 2, 2021), https://archive.ph/wip/ofSkv. To

date, a majority of the RTOs and ISOs across the country have selected LSP entities to build

transmission projects. *See* Ex.A ¶9.

LSP subsidiaries and affiliates are currently eligible to compete in all three of the federally

regulated ISO/RTOs that serve portions of Texas.[3] Ex.A ¶5. Southwest Transmission, LLC

("Southwest") is a qualified RFP participant in SPP, which covers parts of western Texas and the

Texas Panhandle and extends north across much of the central United States. Ex.A ¶5a. Verdant

Plains Electric, LLC, Republic Transmission, LLC, Cardinal Point Electric, LLC, and LS Power

Midcontinent, LLC, are qualified in MISO, which covers parts of eastern Texas. Ex.A ¶5b. And

LS Power Grid West, LLC, formerly known as Western Energy Connection, LLC, is qualified for

projects in WestConnect, which covers a sliver of western Texas. Ex.A ¶5c.

In sum, LSP and its subsidiaries and affiliates have shown that they are willing, capable,

and competitive players in the transmission development field and that they consistently deliver

significant benefits to ratepayers when given the opportunity to compete under Order No. 1000, as

compared to transmission projects where incumbent owners are assigned the project without

competition.

C.     **Texas Attempts to Insulate In-State Transmission Owners from Out-of-State
       Competition by Enacting S.B. 1938.**

Incumbent utilities have not taken Order No. 1000's competitive transmission mandate

lying down. In early 2019, Texas utilities lobbied the Texas legislature to help them stave off the

increased competition fostered by FERC's recent actions. Texas lawmakers responded by

---

[3] Much of Texas is served by the Electric Reliability Council of Texas ("ERCOT"). Because
ERCOT operates wholly within Texas, it is not subject to FERC's jurisdiction and instead is
subject to the Commission's jurisdiction.

introducing S.B. 1938, which affords incumbents even greater insulation from competition than FERC tolerated before Order No. 1000. S.B. 1938 not only gives incumbent transmission owners an exclusive right to build all new lines that directly interconnect to their current lines; it wholly precludes anyone who does not already operate a transmission facility in Texas from constructing any new transmission lines—including regional, cost-allocated lines on the interstate grid—in Texas. *See* Tex. Utils. Code §37.056(e)-(f).

At the request of a Texas legislator, the U.S. Department of Justice ("DOJ") weighed in on S.B. 1938 before its enactment. *See* Letter from Daniel Haar, Acting Chief, Competition Pol'y & Advoc. Section, Antitrust Div., U.S. Dep't of Just. to Travis Clardy, State Rep., Tex. House of Reps. (Apr. 19, 2019), https://www.justice.gov/atr/page/file/1155881/dl. DOJ expressed significant "concern[]" that the bill "would limit competition, thereby potentially raising prices and lowering the quality of service for electricity consumers." *Id.* at 1; *see id.* at 6-7. DOJ also opined that the bill "may interfere with interstate commerce" in violation of the Commerce Clause. *Id.* at 4 & n.16.

Texas pressed forward anyway. On May 16, 2019, S.B. 1938 was signed into law. As enacted, S.B. 1938 gives the owner of an "existing electric utility facility" the right "to build, own, [and] operate a[ny] new transmission facility that directly interconnects with" its existing facility. Tex. Utils. Code §37.056(e); *see id.* §37.056(f). If the incumbent entity chooses not to build the new facility, it "may designate another electric utility" to do so—but only among the pool of utilities "currently certificated by the [Public Utility Commission of Texas ("Commission")] within the same electric power region." *Id.* §37.056(g). S.B. 1938 thus limits the right to build and operate approved transmission lines in Texas to those entities that already have a Texas transmission and distribution footprint, and excludes any out-of-state entities from building these

lines, regardless of whether the lines cross Texas' state boundaries, whether costs for the lines are allocated to ratepayers outside of Texas, or whether the lines were approved by an interstate organization such as MISO, SPP, or WestConnect.

## II.    Procedural Background.

**A.** On June 17, 2019, Plaintiff NextEra Energy Capital Holdings, Inc., and several of its affiliates (collectively, "NextEra") filed this lawsuit and moved to preliminarily enjoin the state from enforcing S.B. 1938.  Dkt.1; Dkt.7.  Shortly thereafter, LSP moved to intervene.  Dkt.33.

On February 26, 2020, Judge Yeakel granted the state's motion to dismiss and denied LSP's motion to intervene.  Dkt.143.  Relying on *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), Judge Yeakel concluded that S.B. 1938 does not trigger strict scrutiny under the Commerce Clause.  Dkt.143 at 10-12.  Judge Yeakel also concluded that S.B. 1938 survives the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), on the ground that the law's purported benefits outweigh any burden it may impose on interstate commerce.  Dkt.143 at 12-13.  NextEra appealed the dismissal; LSP participated in the appeal as an *amicus curiae*.

**B.** On August 30, 2020, the Fifth Circuit reversed in relevant part, rejecting nearly every aspect of Judge Yeakel's reasoning.  At the outset, the Fifth Circuit held that "*Tracy* does not shield SB 1938 from dormant Commerce Clause scrutiny"; whereas *Tracy* involved a "noncompetitive, captive market in which the local utilities alone operate," S.B. 1938 "governs only a competitive market."  *Lake*, 48 F.4th at 319, 321.  The Fifth Circuit proceeded to hold that S.B. 1938 triggers strict scrutiny, explaining that the statute's "very terms … discriminate against interstate commerce" by "[l]imiting competition based on the existence or extent of a business's local foothold."  *Id.* at 326.  The court thus remanded the case for the application of strict scrutiny, i.e., "whether [Texas] can show that [it] has no other means to 'advance[] a legitimate local purpose.'"  *Id.*  The Fifth Circuit also reinstated Plaintiffs' "claims that SB 1938 has a discriminatory purpose

or effect," as well as their *Pike* balancing claim, while noting that the finding of facial discrimination could obviate the need to litigate these "fact dependent" issues. *Id.* at 326-27. Finally, in a separate opinion, the court held that LSP was entitled to intervene in the litigation. *See NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, 2022 WL 17492273, at \*2 (5th Cir. Dec. 7, 2022).

**C.** Texas filed a petition for certiorari, and the Supreme Court called for the views of the Solicitor General. *See* Docket Entry, *Lake v. NextEra Energy Cap. Holdings, Inc.*, No. 22-601 (U.S. Mar. 6, 2023). After the Solicitor General filed a brief on behalf of the United States urging the Court to deny review and arguing that the Fifth Circuit's decision was correct, *see* Brief for the United States as Amicus Curiae, *Lake*, 2023 WL 7002451 (U.S. Oct. 23, 2023), the Court denied certiorari without noted dissent, 144 S.Ct. 485 (2023).

**D.** The case was finally reassigned to this Court, and district court proceedings resumed in January 2024. Dkt.168; Dkt.171. Shortly thereafter, the Court granted LSP's motion to intervene, per the Fifth Circuit's instructions. Dkt.172. On March 15, 2024, NextEra moved for judgment on the pleadings. Dkt.212. On April 1, 2024, LSP filed a response joining in and supporting that motion. Dkt.220 at 3. The motion remains outstanding.

On August 23, 2024, LSP submitted a letter informing the Court that SPP, which manages the electric grid and wholesale power market for much of the central and southwest United States, is slated to approve approximately $7.1 billion in new electric transmission projects—including several large new projects in Texas—when its Board of Directors meets on October 29, 2024. Dkt.236. As LSP explained, unless this Court enjoins S.B. 1938 before that date, SPP will likely rely on S.B. 1938 to assign projects to incumbent transmission owners, irreparably harming LSP

by blocking it from competing for and being awarded any of the new SPP-approved projects in Texas. *Id.*

LSP now moves for a preliminary injunction that would allow it to compete for these (and other) new projects during the pendency of this litigation.

## ARGUMENT

"In deciding a motion for a preliminary injunction, a court must consider four factors": (1) "the likelihood of the movant's ultimate success on the merits"; (2) "a substantial threat of irreparable harm to the movant absent the injunction"; (3) "the balance of harms to the parties"; and (4) "the public interest." *Career Colls.*, 98 F.4th at 233. All four factors point strongly in the same direction here. First and foremost, LSP is overwhelmingly likely to succeed on the merits, as the Fifth Circuit has already held that S.B. 1938 facially discriminates against interstate commerce and thus is almost certainly invalid. Second, LSP faces a fast-approaching threat of irreparable injury; absent judicial intervention, LSP and its affiliates stand to be barred from competing for over $1 billion of new electric transmission projects in Texas that SPP is slated to approve on October 29, 2024. Finally, the remaining equitable factors weigh in favor of an injunction, as S.B. 1938 harms not only out-of-state companies like LSP, but also consumers who will bear the costs of Texas' anticompetitive scheme. This Court should preliminarily enjoin S.B. 1938 and allow LSP to compete for new projects during the pendency of this litigation.

## I.     LSP Is Highly Likely To Succeed On The Merits.

As the full Fifth Circuit recently made clear, "likelihood of success on the merits ... is 'the most important'" of the preliminary injunction factors. *Abbott*, 110 F.4th at 706. Here, it is also the most straightforward, as the Fifth Circuit's decision in *Lake* conclusively establishes that LSP is *at the very least* likely to succeed on the merits of its challenge to S.B. 1938.

As Plaintiffs have explained, the Fifth Circuit's finding of facial discrimination effectively

disposes of this case. *See* Dkt.212 (motion for judgment on the pleadings); *Lake*, 48 F.4th at 326 ("SB 1938 discriminates on its face"). The Supreme Court has long held that "State laws discriminating against interstate commerce on their face are 'virtually *per se* invalid.'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996) (quoting *Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99 (1994)); *see also, e.g.*, *Hughes*, 441 U.S. at 337 ("Such facial discrimination by itself may be a fatal defect[.]"). "This rule is essential to the foundations of the Union." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). While other, ancillary aspects of dormant Commerce Clause doctrine may be less "[a]ssured[]" of their place in the firmament of constitutional law, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 364 (2023), the antidiscrimination rule is fundamental. When a state law by its plain terms gives "differential treatment [to] in-state and out-of-state economic interests" in a way "that benefits the former and burdens the latter," *Granholm*, 544 U.S. at 472, it can be upheld only in the exceedingly rare circumstance in which a state can carry the "extremely difficult burden" of demonstrating that the law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Camps Newfound*, 520 U.S. at 581-82.

Texas cannot carry that heavy burden here. In attempting to satisfy its burden, Texas is limited to the justifications the legislature offered when it enacted S.B. 1938. *See Hughes*, 441 U.S. at 338 n.20; *see also* Dkt.212 at 7 (citing additional authority). Those purported justifications are nowhere near sufficient. The state has claimed that S.B. 1938 is necessary to (1) "clean-up statutory remnants," (2) "ensure the geographic continuity of the system in a way that further facilitates reliability," and (3) "ensure[] that" the Commission "maintains its current jurisdiction over transmission rates borne by Texas consumers." Brief for Appellees, *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, 2020 WL 2119791, at *32-33 (5th Cir. Apr. 22, 2020) (No. 20-50160)

(quoting CA5.ROA.2153).  The first purported justification fails, as administrative convenience is never a compelling interest—not in this context, *see, e.g.*, *Nat'l Revenue Corp. v. Violet*, 807 F.2d 285, 290 (1st Cir. 1986), or any other.  And while facilitating reliability is certainly legitimate, if not compelling, Texas' reliance on that interest fails twice over:  Even if one accepts the highly dubious premise that S.B. 1938 ensures grid reliability or speedy construction of necessary lines, those interests plainly could be achieved through other, nondiscriminatory alternatives.  *See* Dkt.212 at 9-12; Dkt.228 at 3-6.  Indeed, FERC already allows SPP to exempt a "time-sensitive" project from the competitive bidding process when the project is "needed in three years or less to solve reliability criteria violations."  *Sw. Power Pool, Inc.*, 171 FERC ¶61,213, at ¶¶2-3 (June 18, 2020) (discussing the "immediate need reliability project exemption").  Further, the state has no explanation for how so many other states have managed to deliver reliable energy to their residents without discriminating against interstate commerce.  *See Lake*, 48 F.4th at 326.

As for the state's desire to maintain authority over *interstate* transmission rates in Texas, that is not even a legitimate state interest.  In fact, it gives away the game.  As the Fifth Circuit just reminded Texas in no uncertain terms, "only Congress … regulate[s] interstate wholesale transactions."  *Id.* at 310.  What Texas is really saying, then, is that it wants to enjoy the benefits of the interstate grid without ceding the control that necessarily comes with joining an interstate market served by instrumentalities of interstate commerce.  But balkanizing a state from interstate commerce is the very problem the Commerce Clause is meant to guard against.  Texas' desire to veer into the federal government's lane cannot justify its facially discriminatory ban.  *See Granholm*, 544 U.S. at 490 (explaining that a state's desire for "greater regulatory control … does not justify [a] discriminatory ban").  Accordingly, this Court can (and should) hold that S.B. 1938 fails strict scrutiny based on undisputed and judicially noticeable facts, and grant Plaintiffs' motion

for judgment on the pleadings.

In all events, even assuming Defendants are correct that "additional factual development" is warranted before resolution of the merits, Dkt.226 at 2; *see* Dkt.224 at 1, there is no denying that Plaintiffs are at least *likely* to succeed on the merits of their claims. *Lake* compels that conclusion, as the state effectively conceded in seeking certiorari. The state told the Supreme Court that the Fifth Circuit's remand for application of strict scrutiny is "of little comfort" because the state's burden is "nearly insurmountable." Pet. for Cert., *Lake*, 2022 WL 18089507, at *31- 32. Elsewhere in the same petition, the state went so far as to criticize the Fifth Circuit for "hypothesiz[ing]" that the state has *any* chance of success on remand, accusing the Fifth Circuit of "ignoring" the Supreme Court's repeated admonitions "that[,] under the dormant Commerce Clause[,] 'a discriminatory law is virtually *per se* invalid.'" *Id.* at *10-11 (alteration and quotation marks altered). Given those representations, the state cannot credibly dispute that LSP is likely to succeed on the merits.

## II.    LSP Will Be Irreparably Injured If It Is Barred From Competing For New Projects.

LSP (and others) will suffer irreparable harm without an injunction. The SPP Board is slated to approve over $1 billion in new transmission projects in Texas at its October 29, 2024 board meeting. *See* Ex.A ¶6. These new projects include 293 miles of 765 kV transmission line from Eddy County, New Mexico, to Potter County, Texas, with about 148 miles of the new line— representing roughly half of the project's $1.27 billion total cost—located in Texas; 150 miles of 345 kV transmission line from Beckham County, Oklahoma, to Potter County, Texas, with about 131 miles of the new 150 mile line—representing roughly $400 million of the project's $442 million total cost—located in Texas; 46 miles of new 230 kV transmission line from Moore County to Dallam County, at a projected cost of $52.8 million; and 11 miles of new 115 kV transmission line in Gray County, at a projected cost of $14.3 million. *See* Ex.A ¶6, attach.1; SPP, *Portfolio*

*Update* at 6, 16-17, 35-37 (Aug. 28, 2024) ("Ex.B").  LSP subsidiary Southwest Transmission, LLC is a qualified RFP participant in SPP and is therefore eligible to bid on and be assigned these new competitive projects.  Ex.A ¶5a & n.1, ¶9.  Although Southwest has not yet made a final decision on whether it will bid on any of the Texas projects that SPP is poised to approve, as the project details have not yet been finalized and the bidding process will not commence until early 2025, Ex.A ¶9, the Commerce Clause does not permit Texas to simply bar Southwest at the threshold.  But if S.B. 1938 remains in effect on October 29, SPP will likely assign all of the Texas projects to incumbent transmission owners without giving Southwest or other qualified RFP participants an opportunity to compete for them.  Ex.A ¶7; *see Sw. Power Pool, Inc.*, 149 FERC ¶61,048, at ¶¶143-46; SPP Tariff at Attachment Y, §I.1.e.  And further irreparable injuries loom on the horizon, as other regional transmission planning entities are poised to approve additional new transmission projects in Texas in the coming months.  Ex.A ¶8.

LSP thus faces an imminent threat of irreparable injury unless S.B. 1938 is enjoined before October 29, 2024.  As the Fifth Circuit and others have held, "the loss of constitutional freedoms … unquestionably constitutes irreparable injury."  *BST Holdings*, 17 F.4th at 618; *see also, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (same); *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (similar); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (similar); *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1017 (8th Cir. 2023) (similar).  As discussed, S.B. 1938 violates "[t]he right secured by the Commerce Clause," i.e., "the right to engage in interstate trade that is free from discriminatory restrictions imposed by the states." *Dickerson v. Bailey*, 336 F.3d 388, 408 n.86 (5th Cir. 2003).  That is an independently sufficient basis for concluding that LSP has established irreparable injury.  *See, e.g.*, *Ind. Fine Wine & Spirits, LLC v. Cook*, 459 F. Supp. 3d 1157, 1170 (S.D. Ind. 2020) (dormant Commerce Clause

violation constitutes *per se* irreparable injury); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F.Supp.2d 844, 878 (N.D. Ill. 2000) (same); *Am. Librs. Ass'n v. Pataki*, 969 F.Supp. 160, 168 (S.D.N.Y. 1997); *Citicorp Servs., Inc. v. Gillespie*, 712 F.Supp. 749, 753-54 (N.D. Cal. 1989) (same); *Humana Ins. Co. v. LeBlanc*, 524 F.Supp.2d 764, 777 (M.D. La. 2007) (similar), *rev'd on other grounds sub nom. United Healthcare Ins. Co. v. Davis*, 602 F.3d 618 (5th Cir. 2010).

On top of that, LSP faces irreparable injury through the loss of the unique business opportunities that SPP is poised to award. Courts have repeatedly held that a company is irreparably harmed if it is disadvantaged in—let alone completely barred from—competing for business opportunities. *See, e.g.*, *Gerling Glob. Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 754 (9th Cir. 2001) (plaintiffs unquestionably "established a likelihood of irreparable harm" where statute would block them from doing business in a particular state); *Career Colls.*, 98 F.4th at 237-38 (lost business opportunities constituted irreparable harm); *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67 (2d Cir. 2007) ("It is well-established that a movant's loss of current or future market share may constitute irreparable harm."). And LSP has no prospect of recovering damages for these lost opportunities because the Commission is a state agency that enjoys sovereign immunity and thus can be sued only for "prospective relief." *Dobbin Plantersville Water Supply Corp. v. Lake*, 108 F.4th 320, 325 (5th Cir. 2024). That "makes [LSP]'s harm irreparable for purposes of seeking preliminary injunctive relief." *Portée v. Morath*, 683 F. Supp. 3d 628, 636 (W.D. Tex. 2023) (Pitman, J.) (citing *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021)); *accord Ind. Fine Wine & Spirits*, 459 F. Supp. 3d at 1170.

## III. The Remaining Factors Overwhelmingly Weigh In Favor Of Injunctive Relief.

"The balance-of-harms and public-interest factors merge when [as here] the government

opposes an injunction." *Career Colls.*, 98 F.4th at 254.  Those factors weigh strongly in favor of preliminarily enjoining S.B. 1938.

There are compelling equitable reasons to grant a preliminary injunction.  As discussed, LSP and other qualified transmission developers in SPP face a violation of constitutional rights for which there is no adequate remedy at law, as well as the imminent loss of over $1 billion in unique business opportunities in Texas.  Consumers also face significant economic harm:  As FERC has explained, rights of first refusal tend to "undermine the identification and evaluation of a more efficient or cost-effective solution to regional transmission needs," resulting in rates "that are unjust and unreasonable."  Order No. 1000, 136 FERC ¶61,051, at ¶7; *see also id.* at ¶¶231, 285. Federal courts of appeals have likewise recognized that rights of first refusal are contrary to the public interest.  *See, e.g.*, *Lake*, 48 F.4th at 324 n.9 (recognizing that a state law that grants in-state incumbents an "exclusive right" to build new transmission lines "raises prices in the interstate market," thus harming consumers); *Emera Me. v. FERC*, 854 F.3d 662, 671-72 (D.C. Cir. 2017) (upholding FERC's conclusion that "rights of first refusal harmed the public interest"); *MISO Transmission Owners v. FERC*, 819 F.3d 329, 333 (7th Cir. 2016) (observing that incumbent transmission owners were not "able to articulate any benefit" that right of first refusal would "confer on consumers of electricity or on society as a whole"); *cf. Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75, 77 (D.C. Cir. 2016) (holding that the presumption that contract rates for wholesale energy are just and reasonable does not apply to "anti-competitive rights of first refusal").

There are no meaningful equities supporting the state's position.  The public obviously has no interest in paying artificially high rates for electricity, *see MISO Transmission Owners*, 819 F.3d at 333, and "the government suffers no injury when a court prevents it from enforcing an unlawful law," *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 287 (5th Cir. 2024), *cert. granted*,

144 S.Ct. 2714 (2024). All relevant considerations thus support allowing qualified RFP participants in SPP, such as LSP, and qualified developers in the other regional planning areas to compete for new regional transmission projects in Texas during the pendency of this litigation by enjoining enforcement of S.B 1938.

## CONCLUSION

The Court should preliminarily enjoin enforcement of S.B. 1938 before October 29, 2024.

Dated: September 27, 2024                    Respectfully submitted,

s/Christina R. Switzer                       s/Erin E. Murphy
Christina R. Switzer                         PAUL D. CLEMENT (*pro hac vice*)
Engleman Fallon, PLLC                        ERIN E. MURPHY (*pro hac vice*)
823 Congress Ave, Suite 300-67               MATTHEW D. ROWEN (*pro hac vice*)
Austin, TX 78701                             JOSEPH J. DEMOTT (*pro hac vice*)
(202) 464-1330                               CLEMENT & MURPHY, PLLC
cswitzer@efenergylaw.com                     706 Duke Street
                                             Alexandria, VA 22314
                                             (202) 742-8900
                                             erin.murphy@clementmurphy.com

*Counsel for Plaintiff-Intervenor LSP Transmission Holdings II, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.   Pursuant to agreement, the confidential version of the foregoing was also served on counsel for all parties by electronic mail.

<u>s/Erin E. Murphy</u>
Erin E. Murphy

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NEXTERA ENERGY CAPITAL HOLDINGS, INC., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> KATHLEEN JACKSON, Interim Chair, Public Utility Commission of Texas, et al., <br><br> *Defendants*. | Civil Action No. 1:19-cv-626 |

**[PROPOSED] ORDER GRANTING LSP TRANSMISSION HOLDINGS II, LLC'S
MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiff-Intervenor LSP Transmission Holdings II, LLC's motion for a preliminary injunction.  The Court being fully advised, the motion is hereby **GRANTED**. Defendants are hereby **ENJOINED** from enforcing S.B. 1938 of 2019, which is now codified at Texas Utilities Code §§37.051, 37.056, 37.057, 37.151, and 37.154, during the pendency of this litigation.